TOHER et al. v. CROUNSE et al.

(Supreme Court, Special Term, Madison County. December 27, 1907.)

1. PERPETUITIES—SUSPENSION OF POWER OF ALIENATION.

Where a will gives one-third of the residue of testator's estate, both real and personal, to the children of each of his three children, respectively, the shares not to be paid till the youngest of the three families becomes 21 years old, and gives the executors power to sell any part of the real estate and invest the proceeds, and directs them to pay to the parents of the children the net proceeds or interest each year, constituting the executors trustees for the purpose of the will, a valid trust is created in both the realty and personalty, suspending the power of alienation during its continuance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, §§ 49, 52–54.]

2. SAME.

Under Real Property Law, Laws 1896, p. 565, c. 547, § 32, providing that a minority is deemed a part of a life, and not an absolute term equal to the possible duration of the minority, where a testator leaves one-third of the residue of his estate in trust for the children of each of his three children, respectively, their shares not to be paid to them till the youngest of the three families of children becomes 21 years old, the power of alienation is suspended only till the majority or earlier death of the youngest child, and not for a definite period, till he would become 21 years old if he lived.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, § 50.]

3. SAME.

The trust continues during the minority of the youngest child living at testator's death, and not of all the children of the three families living at that time; and hence does not violate the rule against perpetuities.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, § 45.]

**4. SAME.**

The suspension of the power of alienation during the minority of a child born after testator's death is void, since it is for a longer period than two lives in being.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, § 45.]

**5. COURTS—PREVIOUS DECISIONS AS CONTROLLING—DICTA.**

Dicta in an opinion of the Court of Appeals, though entitled to respectful consideration in the Supreme Court, are not entitled to the same consideration as points actually decided.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 335.]

**6. WILLS—CONSTRUCTION—LEGATEES—AFTER-BORN CHILDREN.**

Where a testator leaves property in trust for the children of his three children, their shares not to be paid to them till the youngest of the three families becomes 21 years old, provided that, if either of his children have no children at testator's death, the shares should be paid in the usual course of distribution, after-born children are not entitled to a share of the estate.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 1116–1127.]

**7. SAME.**

Where a testator's daughter has one child living at the date of the will, that the will makes a devise to "her child or children" does not indicate that children born after testator's death are included in the devise.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 1116–1127.]

**8. CONVERSION—DIRECTIONS IN WILL.**

Where a will directs the executors to divide the residue of the estate, real and personal, into three shares, and speaks of these shares being "paid" to the beneficiaries, and gives a power of sale, though not in imperative terms, there is an equitable conversion of the realty into personalty.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Conversion, §§ 28–43.]

Action by Rhody Toher and another, executors of the will of James W. Marshall, against Melva M. Crounse and others.    Findings for plaintiffs.

This action is brought to obtain a judicial construction of certain provisions of the will of James W. Marshall, deceased.  The will bears date April 4, 1903, and the decedent died February 8, 1907.  The will has been duly admitted to probate by a decree of the Surrogate's Court of Madison county. At the date of the will and at the date of the decedent's death he had three children, the defendants Melva M. Crounse, Frederick W. Marshall, and Charles B. Marshall.  The defendant Melva M. Crounse has one child, the defendant Frederick M. Crounse, now of the age of five years.  The defendant Frederick W. Marshall has three children, Frank J., aged 16 years, Fred G., aged 15 years, and Otis P., aged 11 years.  The defendant Charles B. Marshall has three children, Harold G., aged 15 years, Miles P., aged 10 years, and James S., aged 8 years.  The greater part of the personal and real estate left by the decedent was disposed of by the sixth or residuary clause of the testator's will. This clause is attacked by the children of the decedent upon the ground that the power of alienation of the real property and the absolute ownership of the personal property are suspended for an unlawful period.

C. Carskaddan, for plaintiffs.
Lewis E. Carr, for defendant Melva M. Crounse.
Coville & Moore, for defendant Frederick W. Marshall.
Joseph Beal, for special guardian for infant defendants.

COMAN, J. The sixth clause of the will, by which the decedent attempts to dispose of his entire residuary estate, reads as follows: For convenience in referring to the different provisions of this clause, I have divided it into three parts as follows:

First subdivision:

"I hereby direct my executors, hereinafter named, to divide all the rest, residue and remainder of my estate, both real and personal, into three equal shares and I give, bequeath and devise one of said shares to the child or children of my said daughter. One share to the children of my said son Frederick W., and one share to the children of my said son Charles B., but said shares are not to be paid to the said children or any of them until the youngest of said three families of children becomes twenty-one years of age."

Second subdivision:

"In case there shall be no children surviving of either my said daughter or my said sons respectively at the time of my decease, then I hereby give, bequeath and devise the said one-third of my residuary estate as follows: To my daughter, Mrs. Crounse, if she has no child living at the time of my decease, to my son Frederick W., if he has no child living at the time of my decease, to my son Charles B., if he has no child living at the time of my death but in such case the share so given to the parent to be paid or distributed in the usual course of administration."

Third subdivision:

"I hereby give and grant unto my executors hereinafter named full power and authority to sell and convey any part of my real estate included in said residuary clause and invest the proceeds in interest bearing securities or deposits in savings banks, for the purpose of carrying out the provisions of this will, hereby directing my said executors to pay to the parents of such children the net proceeds or interest of said shares in each year, hereby making and constituting my executors hereinafter named trustees for the purposes of this will."

It is the contention of the children of the decedent that these provisions of the will suspend the power of alienation of the real property and the absolute ownership of the personal property either, first, during a definite period, to wit, the period of the minority of the youngest grandchild of the decedent, or, in case of his earlier death, the period of his minority if he had lived to attain the age of 21; or, secondly, during the minority of each of the seven grandchildren of the decedent. It is hardly necessary to say that, if this contention is correct, the will suspends the absolute ownership of the property for an unlawful period, and is void. The difficulties which arise over the construction of this will relate almost entirely to discovering the purpose and intent of the testator. When that is ascertained, it is a comparatively simple matter to determine whether such intent was a lawful or an unlawful one.

The first question over which counsel differ is as to whether or not the decedent created or attempted to create a trust. It is the contention of counsel for the defendant children that the testator attempted to vest the entire residuary estate in the trustees during the period in question; while the attorneys for the special guardian and for the executors contend that there was no trust created or attempted, or, if so, it was a mere passive trust, void under the provisions of section 73 of the real property law. Laws 1896, p. 570, c. 547. It is mani-

fest that, if a valid trust was created, the absolute power of alienation was suspended during the period of the trust, and it is therefore important to determine this question at the outset of our examination. By the provisions of the first subdivision of the residuary clause above quoted, the testator gave his entire residuary estate per stirpes to his grandchildren, subject only to the provision that the same was not to be paid to them until the youngest of said three families of children becomes 21 years of age. The contingency provided for in the second subdivision above quoted has not arisen, and cannot arise, and it is of no consequence in this case, excepting as it throws light upon the testator's intention with respect to the opening of the alleged trust to let in after-born grandchildren, and this question will be considered later. By the third subdivision the executors are authorized and empowered to sell and convey any part of the decedent's real estate, and invest the proceeds in interest-bearing securities, or deposit the same in savings banks, for the purpose of carrying out the provisions of the will; and then follows this significant provision:

"Hereby directing my said executors to pay to the parents of said children the net proceeds or interest of said shares in each year, hereby making and constituting my executors hereinafter named trustees for the purposes of this will."

It will be seen that there are no express words of gift to the executors or trustees; and, if the residuary estate was vested in them at all, it is by implication, and not by express words. But the intention of the testator is to be derived from a consideration of all the provisions of his will when taken together, and, when all the provisions of this residuary clause are read together and due effect given to each, it seems to me very clear that the testator's intention was that his entire residuary estate should be held and invested by the trustees during a certain period, and that during that period the income arising therefrom should be paid over in equal parts or shares to his three children. It has been suggested by counsel for the special guardian that the provisions of the third subdivision relate wholly and exclusively to the real property, but such is not my conclusion. It is "the net proceeds or interest of said shares" which the executors are to pay over each year to the testator's children, and the words, "said shares," clearly refer not to the real property which the testator has not directed to be divided into shares at all, but to the three shares into which, by the first subdivision, he directs his entire residuary estate to be divided. If I am correct in this conclusion, a valid trust was created and the entire residuary estate is vested in the trustees, unless the period provided for the continuance of the trust is repugnant to some provision of law.

Having reached the conclusion that a trust was created and that the power of alienation is suspended, the next vital question for consideration in this case is: What is the term or period during which said trust was to continue, and during which the power of alienation is suspended? It is the contention of the testator's children, first, that the power of alienation is suspended during the minority of the youngest grandchild, and until the time when the youngest grandchild would attain his majority, if living. I find nothing in the will which indi-

cates such an intention. The numerous authorities which have been called to my attention by counsel do not in my judgment bear out such a contention. For instance, in the case of Smith v. Edwards, 88 N. Y. 92, the will provided that the fund in question should be kept invested until his "youngest grandchild now born or that may hereafter be born before the final distribution of my estate, shall be of full age." At the time of the testator's death he had four living grandchildren, all of whom were minors. In the case of Haynes v. Sherman, 117 N. Y. 433, 22 N. E. 938, the trust created was to continue until the "youngest child now living shall arrive at the age of twenty-one years, or would arrive at that age if living." That was manifestly an illegal provision, as it suspended absolute ownership for a fixed period of time. In the case of Thompson v. Carmichael's Ex'rs, 1 Sandf. Ch. 387, the trust estate was not to terminate when the youngest grandchild should arrive at lawful age; but "when the youngest of my children then living shall arrive at lawful age." In the case of Hawley v. James, 16 Wend. 61, the language of the will was "until the youngest of the testator's children and grandchildren attaining the age of twenty-one years shall have attained that age." There being more than two grandchildren in existence at the time of the testator's death, it is manifest that the power of alienation was suspended during at least the minority of three persons; and this suspension was clearly invalid. In the case of Coston v. Coston, 118 App. Div. 1, 103 N. Y. Supp. 307, the language was "until such time as the youngest if living should attain the age of twenty-five years." This was another instance in which the absolute ownership was suspended during a fixed period of time. In short, in every case to which my attention has been called by counsel for the defendants there has been a clear and manifest purpose upon the part of the testator to suspend the absolute ownership of his property either during a fixed period of time as until the time when a child would, if living, arrive at the age of 21 years, or during the minority of more than two children. In this case, if I have arrived at the true intention of the testator, the absolute ownership and power of alienation cannot be suspended during a longer period than the single lifetime of Frederick M. Crounse. It is provided by section 32 of the real property law (Laws 1896, p. 565, c. 547) that, for the purposes of this section, a minority is deemed a part of a life, and not an absolute term equal to the possible duration of such minority, and this rule is applicable to personal property as well as to real estate; so, unless there is something in the language of this will which clearly indicates an intention on the part of the testator that the trust should continue during a fixed period—that is, until the date when the youngest grandchild would have arrived at the age of 21 years—this provision must be treated as meaning during the period of his minority or until his earlier death. Jacoby v. Jacoby, 188 N. Y. 124, 80 N. E. 676; Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933. The period fixed by the testator was "until the youngest of said three families of children becomes twenty-one years of age." Similar language, language identical with this in meaning and purport, has been construed by the highest court in the cases cited, and held to create a trust for a lawful

period of time, to wit, during the minority of the child referred to or until his earlier death.

It seems to me that the case of Jacoby v. Jacoby, 188 N. Y. 124, 80 N. E. 676, is decisive of this question. It is true that in the Jacoby Case the court held that the trust was void under the provisions of our statute; but it also and necessarily gave its construction to the provision of the will fixing the time during which the absolute ownership was suspended, and that language cannot in essential elements be distinguished from the language under consideration in this case. In the Jacoby Case the residuary legatees named in the sixth clause were the testator's wife and four children, and the property was directed "to be equally divided and equally shared among them after the youngest child of them shall have attained the age of twenty-one years and until such time and during his minority I desire that my said wife shall receive and have the sole use of the rent and income from said estate." After considering the question whether the attempted trust was valid, Judge Werner, writing the opinion of the court, at page 129 of 188 N. Y., at page 677 of 80 N. E., says:

"The next question to be considered is whether there is anything in the will which offends against the statute forbidding the absolute power of alienation of real property by any limitation or condition for a longer period than during the continuance of not more than two lives in being at the creation of the estate."

It will thus be seen that the exact question which is presented in this case was before the court and considered and decided in the Jacoby Case. The argument there was, as it is here, that the will was void, first, because it suspended the power of alienation during a fixed period not measured by two lives, and also because the same power is suspended during the existence of more than two lives in being. The language of the court in considering these two propositions is exactly applicable to the facts in this case, and is as follows:

"We cannot subscribe to the view that there is anything in the will to indicate that it was the testator's intention to suspend the power of alienation for a fixed period of time. On the contrary, the term used, when given its usual, legal meaning, imports simply a suspension during the 'minority' and that expression as defined by the statute is deemed to signify 'a part of a life and not an absolute term equal to the possible duration of such minority.' Real Property Law, Laws 1896, p. 565, c. 547, § 32. Neither is the second contention of the parties to the effect that the power of alienation is suspended for more than two lives in being, any more admissible than the first. If we should assume that the phraseology of the will were ambiguous, so that it might be given either of two meanings, it would be our duty to adopt that which will uphold the will. Hopkins v. Kent, 145 N. Y. 367, 40 N. E. 4. Thus, if we were in doubt as to whether the division of the testator's property is directed to be made when the youngest of his children shall have arrived at the age of twenty-one years, or upon the majority of the youngest of his children who shall reach that age, we should have to interpret the will as directing the former disposition, because it is valid as against the latter direction, which is invalid. It is not necessary, however, to go to that extremity, for we think that the testator's language is reasonably clear and unambiguous. He directs that his property 'be equally divided and equally shared' among his wife and children 'after the youngest child of them shall have attained the age of twenty-one years.' If we apply to this language the rule that the will speaks as of the time of the testator's death, it plainly refers to the youngest of his children then living, who was, in fact, the testator's youngest child,

and a suspension of the power of alienation during 'his minority' is unquestion-
ably valid. Chaplin on Suspensions, etc., § 100; Van Cott v. Prentice, 104 N.
Y. 56, 10 N. E. 257."

Stress is also laid by counsel upon the language "the youngest of
said three families"; and counsel have argued that the language thus
employed creates a trust during the minority of all of the seven grand-
children of the decedent, but I do not think that such is the natural
interpretation of the language employed. What the testator evidently
intended to say was "until the youngest member of said three families
of children" becomes 21 years of age. Families, as such, do not be-
come 21 years of age, but there is a fixed and definite date when a
child becomes 21 years of age, and for the purpose of making the in-
tention of the testator clear it is the duty of the court in a proper case
to supply a word which the testator may have inadvertently omitted.

It is also contended by the defendant children that, under the pro-
visions of the residuary clause, grandchildren born after the death
of the testator may take under its provisions, and that the absolute
ownership will be suspended during the minority of such after-born
grandchildren. If this contention be well founded, then the trust is
clearly void. The suspension of the absolute ownership of the prop-
erty during the minority of a child born after the testator's death is
clearly a suspension for a longer period than that of two lives in be-
ing, and contravenes the statute. The argument of counsel upon
this point is ingenious, and proceeds upon the theory that the gift is
to three classes of grandchildren, and that where a gift is to a class
in general terms, and the distribution is by the terms of the will to
be made some time subsequent to the death of the testator, the gift
will embrace, not only all children living at the death of the testator,
but also those who should subsequently come into existence before
the date of distribution. This is doubtless the ordinary rule in such
cases, but, like all rules of construction, it must yield to the contrary
intent of the testator in a case where that purpose is apparent and
plainly expressed. The principal authority relied upon by counsel
in support of this contention is the case of Tucker v. Bishop, 16 N.
Y. 402. In that case, however, the will was upheld upon the ground
that by its terms the shares were made payable to each child when he
became 21 years of age. The excerpts from the opinion in this case
to which my attention is called by counsel are therefore purely dicta,
nevertheless they are entitled to respectful consideration as the expres-
sion of the highest court pertinent to the discussion of the case in
hand, but they are not entitled to the same consideration as though
the points under discussion were actually decided in the case. In
subsequent cases the Court of Appeals has distinguished and explained
the case of Tucker v. Bishop, supra. In the case of Everitt v. Everitt,
29 N. Y. 39, at page 75, Denio, C. J., says:

"The leading inquiry upon which the question of vesting or not vesting
turns is whether the gift is immediate and the time of payment or of enjoy-
ment only postponed or is future and contingent, depending upon the bene-
ficiary arriving at age, or surviving some other person, or the like. If fu-
turity is annexed to the substance of the gift, the vesting is suspended; but,
if it appear to relate to the time of payment only, the legacy vests instanter.

1 Jarman on Wills, 760; Gilman v. Reddington, 24 N. Y. 9. The words direct-ing a division or distribution between two or more objects at a future time are equivalent to a direction to pay."

In the case at bar there are words of immediate gift. The language is:

"I give, bequeath and devise one of said shares to the child or children of my said daughter," etc.

It is true that this language is accompanied by a provision postponing the time of payment, and that, reading the whole of the sixth subdivision together, the estate of the grandchildren is under certain conditions subject to an intermediate estate in the trustees. But the language employed is such as to indicate a clear intention on the part of the testator that, subject to the trust estate, the title should vest immediately upon his death in his then living grandchildren. If, however, there be any doubt as to the proper construction of the provisions of the first subdivision to which I have just referred, the testator has completely negatived the idea that after-born children could come in and share in the distribution by the provisions of the second subdivision. In that subdivision he provided that, in case his children shall have no children living at the time of the testator's death, the estate shall be immediately paid over to them and distributed in the usual course of administration. Reading this provision in connection with all the provisions of the sixth clause, the conclusion is inevitable that the testator did not intend that grandchildren born after his decease should share in the distribution. Counsel seek to attach significance to the use by the testator of the expression "to the child or children of my said daughter." Concededly the testator's daughter had but one child at the time when the will was made and at the time of the testator's death; and it is argued from this that no effect can be given to the words "or children," except upon the assumption that they refer to children born after his death. It seems to me, however, that full effect is given to these words if we conclude that by their use the testator intended merely to provide for children born after the making of the will and prior to his death. In any event, the use of this expression cannot prevail against the express provisions of the second subdivisions to which I have referred.

I feel very clear that the will worked an equitable conversion of the real property of the decedent into personalty. It is true that the power of sale is not in terms imperative; but the reading of the whole will makes it manifest that the testator intended such conversion. At the commencement of the sixth clause he says:

"I hereby direct my executors hereinafter named to divide all the rest, residue and remainder of my estate, both real and personal, into three equal shares."

And at other places in his will he speaks of those shares being "paid" to the beneficiaries. Manifestly they could not be paid unless there were a conversion of the real property into money. Under such circumstances, it has been uniformly held that the doctrine of equitable conversion applies, although the power of sale is not in terms imperative.

My conclusion, therefore, is that the sixth or residuary clause of the testator's will contains a valid disposition of all his residuary estate; that the intent and purpose of the testator, as therein expressed, was to give to his executors and trustees the entire residue of his real and personal estate in trust, to invest the same and keep the same invested during the minority of his grandchild Frederick M. Crounse, or until his death before reaching his majority; that the trust estate thus created will terminate upon the arrival of said Frederick M. Crounse at the age of 21 years, or upon his death before arriving at that age; that during the continuance of the trust the estate is to be held and invested by the trustees named, and the income derived from the same is to be paid by the trustees to the three children of the testator in equal shares; that, upon the termination of said trust estate, the body of the residuary estate will be paid to the grandchildren of decedent living at the time of his death per stirpes, or to the representatives of such as are then dead; that the body or corpus of the residuary estate upon the death of the testator vested immediately in the grandchildren one-third part thereof in the child of Melva M. Crounse, one-third part thereof in the three children of the defendant Frederick W. Marshall as tenants in common, and one-third part thereof in the three children of Charles B. Marshall as tenants in common, and that the will worked an equitable conversion of the testator's real estate into personalty.

Findings of fact and conclusions of law may be prepared in accordance with this opinion.