In the Matter of the Estate of MORITZ GRAUER, Deceased.

Surrogate's Court, Kings County, February 14, 1933.

*Cohen, Cole, Weiss & Wharton* [*Robert E. Samuels* and *Myer D. Mermin* of counsel], for the petitioner.

*Gray & Grossman* [*Herman A. Gray* of counsel], for the respondent Louis Grauer.

WINGATE, S.  This is an application to compel an administrator c. t. a. to account.  The petitioner is a remainderman under the will.  The appointment and qualification of the administrator on November 25, 1905, are admitted, as is the fact that no accounting has ever been made respecting his acts in that capacity.  No release by the remainderman of his right to demand an accounting is alleged or shown.  It follows that his rights to the desired relief cannot be successfully denied, since it is primary that mere lapse of time will not bar his demand in this respect.  (*Matter of Beard,* 141 Misc. 888, 889; *Matter of Read,* Id. 716, 718, and cases cited.)  The fact that a similar duty rested upon respondent's cofiduciary, and has now devolved upon her estate, in no wise derogates from the obligation, the performance of which the petitioner herein seeks to enforce.

Whereas, therefore, it is obligatory on the court to grant the precise relief prayed, namely, to direct the respondent to file and proceed to settle an account of his proceedings in this matter, it

appears reasonably obvious from the terms of the will that the final result will confer a benefit of doubtful advantage upon the petitioner. The will is about as inartistic in form and content as the most litigiously minded person could desire. The dispositive directions are contained in three paragraphs, only one of which is numbered. Four general legacies of $100 each are given to as many named individuals, whereupon the document proceeds: "All the rest, residue and remainder of my estate, I give devise and bequeath to my beloved wife, Regina Grauer during her natural life and on her death, I direct that the same be divided as follows: " Then follow four additional $100 legacies to the same persons as the similar gifts previously given, and a direction that the balance be divided equally between eight named children of the testator. The paragraph then concludes: " and during the life of my said wife and until the division of the estate after her death as hereinbefore provided, I direct that my entire said estate be held in trust by my executor and Trustee hereinafter named for the purposes of this will." In the succeeding paragraph testator appointed his attorney " Executor " only, giving him a power of sale.

Whereas it is, of course, primary that the testamentary intent is to be gathered from a reading of the will as a whole (*Matter of Gargiulo*, 134 Misc. 182, 185, and 138 id. 90, 98; *Matter of Farkouh*, 134 id. 285, 286; *Matter of Kirkman*, Id. 527, 528; *Matter of Leonard*, 143 id. 172, 184, and cases cited), it is equally elementary that an absolute testamentary gift will not be cut down by a subsequent direction which is not equally clear. (*Matter of Rossiter*, 134 Misc. 837, 841; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Schulman*, 136 Misc. 169, 170; *Matter of Judge*, 141 id. 254, 255; *Matter of Mehler*, 143 id. 63, 67.)

The gift to the widow in the first dispositive paragraph is one of an absolute life estate couched in the most unequivocal language conceivable. The later clause, which, it is contended, transforms this absolute gift into a trust, is merely a direction that the estate " be held in trust " by testator's fiduciary. No words of gift to the fiduciary are contained in the instrument, nor are any powers granted him in respect to the management of the alleged trust.

The legal practice of classifying as a " trust " a holding of property by a fiduciary endowed with certain powers, is merely a convenient nomenclature. The holding is denominated a " trust " because of the giving of the characteristic powers to the individual by whom they are to be exercised. The process does not operate in reverse so as to bestow ungranted powers not necessarily included by implication, merely by reason of pigeon-holing the testamentary

provisions in a certain manner. (*Matter of Hawley*, 104 N. Y. 251, 261; *Hamilton* v. *Hamilton*, 135 App. Div. 454, 456.)

One basic test of a trust is as to whether the fiduciary is granted power to collect and apply income. This is clearly envisaged in subdivision 3 of section 96 of the Real Property Law, under which statutory authorization it is alone contended that the " trust " here provided is capable of being sustained. (*Coann* v. *Culver*, 188 N. Y. 9, 13; *Cooke* v. *Platt*, 98 id. 35, 38; *Hodgman* v. *Cobb*, 202 App. Div. 259, 265; *Lewis* v. *Howe*, 64 id. 572, 575; affd., 174 N. Y. 340; *Seïdelbach* v. *Knaggs*, 44 App. Div. 169, 177; affd., 167 N. Y. 585; *Matter of Logan*, 128 Misc. 505, 506; *Matter of Gambrill*, 135 id. 516, 520.) No such power is expressly given, and the unequivocal bequest of the entire life estate to the widow negatives the possibility of an implied gift of a part thereof to the executor.

It follows, therefore, that since no trust permitted by the provisions of section 96 was created, the rights of the executor, if any, during the continuance of the life of the widow were merely those of the trustee of a dry or passive trust, the subject-matter of which would pass directly to the life tenant. (Real Prop. Law, § 93; *Matter of Wolf*, 140 Misc. 595, 596; *Matter of Engel*, Id. 276, 282, 283; *Matter of Shevlin*, 143 id. 213, 216; *Matter of Bell*, 141 id. 720, 722; *Matter of Harris*, 138 id. 287, 289, and cases last above cited.)

It would have been entirely possible for the testator to have annexed trust duties to the executorial function. (*Matter of Rappold*, 138 Misc. 163, 165; *Matter of Galloway*, 139 id. 183, 189; *Matter of Kronson*, 140 id. 102.) If this had been done, these duties would have devolved upon the administrator c. t. a. unless they involved a peculiar confidence. (*Matter of White*, 135 Misc. 377, 384.) It is sufficient to note that under the will at bar, no such additional duties were imposed, wherefore, the respondent has no accountability in a trust capacity. His sole obligations under the will consisted in the marshaling of the assets, the payment of debts, etc., of the four primary $100 legacies and the letting of the widow into her life estate in the remainder. These duties he was called upon to discharge and the manner of his performance of his stewardship in this regard is subject to the jurisdiction of the court in this proceeding.

His coadministrator c. t. a. was the life tenant widow. If the duties hereinbefore enumerated were actually performed, the possibility of any liability on his part would be extremely remote. The life tenant in possession would become a constructive trustee for the remaindermen and would presumably be solely accountable in this regard. (*Matter of Read*, 141 Misc. 716, 719, and cases cited.) In view of the fact that she has died so recently and that no fiduciary

has been appointed for her estate, it would appear the part of wisdom, for the avoidance of unnecessary litigation, that the accounting to be made herein should be postponed until the expiration of a reasonable time after the appointment of a representative for her estate by the appropriate Surrogate's Court and his qualification.

The respondent will, therefore, be directed to file and proceed to settle his account herein within sixty days after the appointment and qualification of a legal representative of the estate of Regina Grauer.

Proceed accordingly.